WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Northland Insurance Company,<br><br>    Plaintiff,<br><br>vs.<br><br>Correctional Medical Services, Inc., et al.,<br><br>    Defendant. | No. CV-04-347-PHX-FJM<br><br>**ORDER** |

    The court has before it Defendants DiMaano and Figueroa's Motion for Summary Judgment (doc. 23)[1], Plaintiff's Response (doc. 36), and Defendants' Reply (doc. 40). For the reasons set forth below, we grant Defendants' Motion for Summary Judgment.

I.

    The State of Arizona, through the Department of Corrections (DOC) operates the Alhambra correctional intake facility. Florence West is a correctional facility owned and operated by Correctional Services Corporation (CSC), with whom the State contracts in order to provide correctional services to inmates. Pursuant to the contract between CSC and the State, CSC is obligated to indemnify the State for claims arising out of CSC's provision of

---

[1] The motion was originally styled a Motion to Dismiss, but was converted to a Motion for Summary Judgment pursuant to this court's order, dated April 4, 2005.

1  services at Florence West, and to name the State as an additional insured on its policy with
2  plaintiff Northland Insurance Company (Northland).

3  While Jose Valdez was an inmate at the Alhambra correctional facility, he complained
4  of failing eyesight and was treated by Drs. Antonio DiMaano and Reynaldo Figueroa
5  (collectively, the "Defendant Doctors").  Thereafter, Valdez was transferred to Florence
6  West, where he continued to complain of vision problems.  Valdez' vision problems
7  continued to worsen until ultimately he became completely blind.

8  Valdez filed an action in state court against the State of Arizona, Maricopa County
9  Sheriff's Department, and CSC for medical malpractice.  In October, 2001, the state court
10 entered judgment against the State in the amount of $5,000,000. Northland paid the damages
11 award pursuant to the insurance policy issued to CSC and the State.  Subsequently, the state
12 court issued a declaratory judgment, concluding that Northland was not responsible for the
13 alleged negligent provision of medical services at the Alhambra facility, before Valdez was
14 transferred to CSC's Florence West facility.

15 Northland subsequently filed this action, seeking indemnification and/or contribution
16 from Drs. DiMaano and Figueroa and others for their alleged negligence in the treatment of
17 Jose Valdez. The Defendant Doctors filed this Motion for Summary Judgment, asserting that
18 they are State employees, not independent contractors, and as such Northland was required
19 to serve them with a Notice of Claim pursuant to A.R.S. § 12-821.01(A).  According to the
20 Defendant Doctors, because Northland failed to provide the required notice, the claims
21 against them are barred.

22                                      II.

23 It is undisputed that Northland did not provide notice pursuant to A.R.S. § 12-
24 821.01(A), which provides in relevant part:

25 > Persons who have claims against a public entity or a public
> employee shall file claims with the person or persons authorized
26 > to accept service for the public entity or public employee . . .
> within one hundred eighty days after the cause of action accrues.
27 > . . . Any claim which is not filed within one hundred eighty days

28

after the cause of action accrues is barred and no action may be maintained thereon.

The issue presented in defendants' Motion for Summary Judgment is whether the claims against the Defendant Doctors should be dismissed for Northland's failure to comply with the notice requirement of § 12-821.01(A). This issue turns solely on the question whether the Defendants Doctors were employees of the State or independent contractors.

In <u>Santiago v. Phoenix Newspapers, Inc.</u>, 164 Ariz. 505, 509, 794 P.2d 138, 142 (1990), the court identified eight factors to determine whether an employer-employee relationship exists: (1) extent of control exercised by the master over details of the work and the degree of supervision; (2) specialization or skilled occupation; (3) distinct nature of the worker's business; (4) materials and place of work; (5) duration of employment; (6) method of payment; (7) relationship of work done to the regular business of the employer; and (8) belief of the parties.

In its argument that the Defendant Doctors are independent contractors, rather than employees, Northland relies primarily on the first two <u>Santiago</u> factors: first, that there is little, if any, control over the details of the doctors' work, and second, that they are highly educated and skilled professionals. Many courts have grappled with the application of these general factors to cases involving professionals. For example, in <u>Lilly v. Fieldstone</u>, 876 F.2d 857, 859 (10th Cir. 1989), the court stated, "[i]t is uncontroverted that a physician must have discretion to care for a patient and may not surrender control over certain medical details." Nevertheless, a "myriad of doctors become employees . . . without surrendering their professional responsibilities." <u>Id</u>.

Recognizing the difficulty in applying the "control test" to cases involving professionals, the court in <u>Beeck v. Tucson General Hosp.</u>, 18 Ariz. App. 165, 500 P.2d 1153 (Ct. App. 1972), described the appropriate factors in determining whether a physician is an employee of a hospital. The court concluded that an employment relationship existed where the hospital billed for the doctor's services; the doctor had no practice outside the hospital; the doctor had provided services at the hospital for five years; the hospital furnished the

1  facility, equipment, supplies, and administrative services at no expense to the doctor;
2  working hours and vacation time were controlled by the hospital; the hospital had the right
3  to control the doctor's standards of performance; and the doctor's medical services were
4  overseen by boards and peer group review. Id. at 169-71, 500 P.2d at 1157-58.

5       Here, the undisputed facts establish that Drs. DiMaano and Figueroa were employees
6  of the State. Dr. DiMaano has been employed by the State since 1989, Dr. Figueroa since
7  1996. Their salaries are paid by the State; they receive W-2 forms from the State; their taxes
8  are withheld by the State; they are subject to the same rules governing vacations, transfers,
9  and holidays as other State employees; they are subject to the State Personnel Board rules and
10 regulations; they are entitled to State employees benefits, including worker's compensation,
11 unemployment insurance and retirement benefits; and they are only allowed pay increases
12 as authorized by the State Legislature. As State employees, all equipment and supplies
13 necessary for their medical services are provided by the State; neither doctor is required to
14 carry his own medical negligence insurance; the doctors are being defended in this lawsuit
15 pursuant to Arizona state law, and all expenses of litigation are paid by the State.
16 Furthermore, the Defendant Doctors submitted the affidavit of Dr. James Baird, the Medical
17 Program Manager for the Arizona Department of Corrections, who is charged with
18 overseeing all of the physicians employed by the Department of Corrections. Dr. Baird
19 stated that, while Drs. DiMaano and Figueroa exercise independent medical judgment to
20 determine a treatment plan for an inmate, the plan is subject to his approval. Furthermore,
21 the referral of an inmate to a specialty physician is subject to Dr. Baird's review; and the
22 doctors can only prescribe medication pursuant to a formulary approved by DOC. Finally,
23 both the doctors and the State agree that an employment relationship exists.

24      Based on the foregoing, we conclude that the undisputed facts establish that Drs.
25 DiMaano and Figueroa are State employees, and as such they were entitled to notice under
26 A.R.S. § 12-821.01(A). Because Northland failed to comply with this provision, the claims
27 against Drs. DiMaano and Figueroa are barred.
28

1  Accordingly, **IT IS ORDERED GRANTING** Defendants DiMaano and Figueroa's
2  Motion for Summary Judgment (doc. 23).
3  DATED this 15th day of November, 2005.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge